IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSLYVANIA

| | |
|---|---|
| **UNITED TRANSPORTATION UNION**<br><br>**and**<br><br>**S. MCCRUMB**<br><br>　　Petitioners,<br>v.<br><br>**UNION RAILROAD COMPANY**<br><br>　　Respondent. | **Case No.**  2:13-cv-01535-LPL<br>**Magistrate Judge Lisa Pupo Lenihan** |

**UNITED TRANSPORTATION UNION'S MEMORANDUM IN
OPPOSITION TO RESPONDENT'S MOTION TO DISMISS UNDER
FED.R.CIV.P. 12(b)(1), OR IN THE ALTERNATIVE, MOTION TO REMAND**

　　Petitioners United Transportation Union ("UTU") and S. McCrumb, by and through counsel, pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure and Local Rule 7, LCvR 7, hereby submit the following as their Memorandum in Opposition to Respondent Union Railroad Company's ("URR" or "the Carrier") Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) or in the Alternative, Motion to Remand.

**INTRODUCTION**

　　UTU petitioned this Court to enforce an arbitration award pursuant to Sections 3 First(p) and Second of the Railway Labor Act ("RLA" or "the Act"), 45 U.S.C. § 153(p) and Second, after URR failed to comply with Award No. 5136 ("the Award") issued by the National Railroad Adjustment Board Fourth Division ("NRAB" or "the Board") (Docket Entry ("D.E.") 1). That Award sustained McCrumb's claim, and, *inter alia*, URR was instructed to return McCrumb to

service and pay McCrumb for all time lost. To date, URR has refused to pay Mr. McCrumb in accordance with the Award.

URR contends, in essence, that it "has attempted to pay McCrumb the lost wages," but that the phrase "made whole" in the Award is a "minor dispute" which requires an interpretation of the parties' collective-bargaining agreement ("CBA") (*Id.* at 2, 6-7). URR additionally claims that the parties' past practice entitles the Carrier's right to offset, relying on various non-precedential arbitration awards (*id.* at 7-8), and asks the Court to remand the matter for an interpretation (*Id.* at 8-9).

The language in the Award, however, is clear: "Claimant shall be returned to service with seniority unimpaired <u>and pay for time lost</u> in accordance with the terms of the Parties' Agreement (D.E. 1-2, Exhibit ("Ex.") A at 6). Further, URR repeatedly admits that the CBA is silent as to offsets (D.E. 12 at 2, 6; D.E. 12-2 at 2), and that it did not argue the offset issue before the NRAB (D.E. 12-2 at 2). In attempting to obtain a second bite of the apple through dismissal or remand, and in failing to pay McCrumb what the Award requires, URR has refused to comply with the Award (D.E. 1 at 3).

## FACTUAL BACKGROUND

On January 19, 2011, the Carrier held an investigation in connection with Claimant's alleged involvement in a January 4, 2011 incident (D.E. 1-2, Ex. A at 2-3).

By letter dated February 18, 2011, the Carrier notified Claimant that he had been found guilty and was terminated from service (D.E. 1-2, Ex. A at 3).

Thereafter, UTU appealed Claimant's dismissal and progressed said claim up to and including arbitration before the NRAB (*Id.*).

By decision dated February 25, 2013, the NRAB found that the Carrier failed to prove the charges against the Claimant, returned him to service, and ordered he be "pa[id] for time lost in accordance with the Parties' Agreement" within 30 days (D.E. 1-2, Ex. A at 6) (emphasis added).

By email dated March 21, 2013, URR Labor Relations Officer Baginski requested McCrumb's W-2 forms for 2011 and 2012 in order to offset any earnings against his award of back pay (D.E. 12-2 at 3).

By email dated March 22, 2013, UTU General Chairperson D.S. Muro replied that there is "no provision [in the Award] that allows for the Carrier to deduct any wages from McCrumb's settlement, nor did the carrier request such provision in their submission. The award clearly states that the Claimant shall be returned to work with full back pay, and all other rights and privileges in tact." (D.E. 12-2 at 3).

When URR refused to pay McCrumb his lost time in accordance with the Award, on October 2, 2013, UTU filed a Petition to Enforce the Award under the RLA (D.E. 1).

On December 23, 2013 and again on January 6, 2014, the Carrier requested an extension in which to answer the Complaint (D.E. 9, 10).

On January 10, 2014, the Carrier filed a request for an interpretation with the NRAB, asking "whether it is prohibited from offsetting the Claimant's outside earnings when calculating back pay" (D.E. 12-1 ¶6, 12-6 at 2-3).

On January 17, 2014, URR filed to dismiss or remand the instant action (D.E. 12).

## ARGUMENT

### I. LEGAL STANDARD

**A. 12(b)(1) Standard**

The standard for a motion to dismiss is well established. Under the Federal Rules of Civil Procedure, a court may grant a motion to dismiss where the court lacks jurisdiction over the subject matter of the dispute. Fed.R.Civ.P. 12(b)(1). "When subject matter jurisdiction is challenged under Rule 12(b)(1), the plaintiff must bear the burden of persuasion." *Kehr Packages v. Fidelcor, Inc.,* 926 F.2d 1406, 1409 (3d Cir. 1991) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)); *see also Development Fin. Corp. v. Alpha Housing & Health Care,* 54 F.3d 156, 158 (3d Cir. 1995). Such burden, however, is minimal. Dismissal for lack of jurisdiction is only appropriate where the right claimed "is so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy." *Growth Horizons, Inc., v. Delaware Cty., Pa.,* 983 F.2d 1277, 1280-81 (3d Cir. 1993) (quoting *Kulick v. Pocono Downs Racing Ass'n,* 816 F.2d 895, 899 (3d Cir. 1987) (quoting *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661, 666 (1974))).

Rule 12(b)(1) challenges are either facial or factual attacks. Facial challenges merely require the court to analyze whether the plaintiff has properly alleged a basis for subject matter jurisdiction in the complaint. *Papco, Inc. v. U.S.*, 814 F.Supp.2d 477, 484 (W.D.Pa. 2011). "[W]hen a court reviews a complaint under a factual attack, the allegations have no presumptive truthfulness, and the court that must weigh the evidence has discretion to allow affidavits, documents, and even a limited evidentiary hearing to resolve disputed jurisdictional facts." *Kestelboym v. Chertoff*, 538 F. Supp. 2d 813, 815 (D.N.J. 2008); *see also Carpet Group Int'l v. Oriental Rug Imps. Ass'n, Inc.,* 227 F.3d 62, 69 (3d Cir. 2000); *Mortensen,* 549 F.2d at 891.

4

Indeed, it has been held that Plaintiff's burden on a Rule 12(b)(1) factual challenge to jurisdiction is lower than the burden on a Rule 12(b)(6) motion for failure to state a claim. *See Gould,* 1999 WL 817729 at 1 (citing *Growth Horizons,* 983 F.2d at 1280-81). Moreover, courts should not allow their "consideration of jurisdiction to spill over into a determination of the merits of the case." *See Growth Horizons,* 983 F.2d at 1281 n. 5 (citing *Kulick,* 816 F.2d at 897; *Mortensen,* 549 F.2d at 891).

This Court has jurisdiction to enforce the Award pursuant to Section 3 First (p) and Second of the Railway Labor Act ("RLA"), 45 U.S.C. § 153 First(p) and Second. *See also Pittsburgh Metro Area Postal Workers Union v. USPS*, 938 F.Supp.2d 555, 559 (W.D. Pa. 2013) ("[W]hile the ambiguity of the arbitrator's award *vel non* may be entirely relevant to determine whether the Union has stated a claim for relief, it is not relevant to this Court's subject matter jurisdiction, which has already been conferred [in § 301] by Congress."). URR's arguments to the contrary are nothing more than an attempt to distract the Court from the law concerning enforcement. The issue is not whether the Court may remand the Award for an interpretation, but is whether an interpretation is in fact necessary here, where the Award is unambiguous.

## II. The Award Need Only Be Enforced And Does Not Concern A Minor Dispute Subject to Mandatory Arbitration.

URR first argues that the Court lacks jurisdiction because this matter is a "minor dispute" subject to mandatory arbitration under the Act (D.E. 12 at 4-7).[1] Congress, in Section 3 First and Second of the Railway Labor Act, 45 U.S.C. § 153 First and Second, has set up the mandatory scheme for resolving so called "minor" disputes. Disputes involving the imposition of discipline are "minor disputes." *Monroe v. Mo. Pac. R.R.,* 115 F.3d 514, 518 (7th Cir. 1998). This process

---

[1] Although URR cites to 45 U.S.C. § 184 in its brief, such Section only applies to airlines and is not applicable to railroads (D.E. 12 at 5).

provides for arbitration as the terminal step when disputes cannot be resolved by the parties. *Consolidated Rail Corp. v. Ry. Labor Exec. Ass'n,* 491 U.S. 299, 302-303 (1989); *see also United Transp. Union v. Baker,* 482 F.2d 228, 230 (6th Cir. 1983); *Bhd. of R.R. Signalmen v. Louisville & Nashville,* 688 F.2d 535, 542-43 (7th Cir. 1982); *Sweeney v. Florida East Coast Ry.,* 389 F.2d 113 (5th Cir. 1968).

Arbitration is available under the Act through either the National Railroad Adjustment Board ("NRAB") under 45 U.S.C. § 153 First, or through a Public Law Board ("PLB") pursuant to 45 U.S.C. § 153 Second.  Once a matter is decided by one of these boards, it is final and binding, and is not subject to review, except on three (3) extremely narrow grounds. 45 U.S.C. § 153 First(q).

> Judicial review of Adjustment Board orders is limited to three specific grounds: (failure of the Adjustment Board to comply with the requirements of the Railway Labor Act; (2) failure of the Adjustment Board to conform, or confine itself to matters within the scope of its jurisdiction; and (3) fraud or corruption. 45 U.S.C. § 153 First(q). <u>Only upon one or more of these bases may a court set aside an order of the Adjustment Board</u>.
> …
> Characterizing the issue presented as one of law, as the Court of Appeals seemed to do here, does not alter the availability or scope of judicial review: The dispositive question is <u>whether the party's obligations to the Adjustment Board's decision fall within any of the three limited categories of review</u> provided for in the Railway Labor Act. Section 153 First(q) unequivocally states that the "findings and orders of the [Adjustment Board] shall be conclusive on the parties" and may be set aside only for the three reasons specified therein.

*Union Pacific R.R. v. Sheehan,* 439 U.S. 89, 93 (1978) (emphasis added).  Indeed, judicial review of board decisions is "among the narrowest known to the law." *Bhd. of Maint. of Way Employees v. Consol. R. Corp.,* 864 F.2d 283, 287 (3d Cir.1988); *see also Atchison, T. & S. Fe Ry. v. Buell,* 480 U.S. 557, 563 (1987) (quoting *Sheehan,* 439 U.S. at 91)).

There is no dispute that discipline cases, such as the underlying claim here, are "minor" disputes (D.E. 12 at 6).  However, once a Board renders a "final and binding" decision under

6

Section 3 First (m), 45 U.S.C. § 153 First (m), such must be enforced in accordance with Section 3 First (p), 45 U.S.C. § 153 First (p), unless the grounds for review under Section 3 First (q), 45 U.S.C. § 153 First (q), are satisfied.  URR has not challenged the Award under Section 3 First (q), but has instead alleged that an interpretation is necessary. URR is unable to meet this standard for review and cannot avoid the Award by asserting an interpretation is needed when there is nothing ambiguous about the Award.  Accordingly, it must be enforced.  *Bhd. of R.R. Signalmen,* 688 F.2d at 542-43; *Denver & Rio Grande Ry. v. Blackett,* 538 F.2d 291, 293 (10th Cir. 1976).

The cases relied upon by URR are inapposite, as the major/minor dispute dichotomy is not at issue here.  (D.E. 12 at 6-7) (citing *Capraro v. United Parcel Service Co.*, 993 F.2d 328, 332 (3d Cir. 1993) (finding state wrongful discharge claims preempted by RLA where resolution of claim required interpretation of CBA within Adjustment Board's jurisdiction); *Choate v. Louisville & Nashville R.R.*, 715 F.2d 369, 372 (7th Cir. 1983) (dismissing discharged employee's emotional distress claim against railroad as a labor dispute within exclusive jurisdiction of Adjustment Board)**.**

Despite URR's arguments to the contrary, *Brotherhood of Maintenance of Way Employees v. Burlington N. R.R.*, 24 F.3d 937, 938 (7th Cir. 1994) is likewise not applicable here.  In *BMWE*, the union requested that the court enforce an arbitration award regarding lubrication work to include not only the portion of the railroad included in its claim, but across the railroad's entire system, and issue an injunction to that effect.  24 F.3d at 938.  The Seventh Circuit held that whether the award on one line encompassed the entire system was a question to be resolved by the Board and not the court.  *Id.* at 940.  The Petitioners have not requested that this Court broaden the Award's application, but only sought the back pay to which McCrumb is

entitled under the clear and unambiguous terms of the Award. While a district court lacks jurisdiction to interpret an award, *Bhd. Loco. Eng'rs & Trainmen v. Long Island R.R.*, 340 Fed.Appx. 727, 729 (2d Cir. 2009), as demonstrated below, no such interpretation is necessary here. Accordingly, the NRAB's Award reinstating McCrumb with pay for time lost is final and binding, and should be enforced.[2]

### III. The Award Is Unambiguous and Therefore Does Not Require an Interpretation By This Court.

URR asserts that the use of "made whole" and "in accordance with the terms of the parties' [CBA]," requires an interpretation of the CBA which is within the exclusive jurisdiction of the NRAB (D.E. 12 at 6). UTU concedes that where an award is ambiguous, the appropriate course of action is further arbitration proceedings to interpret the award under Section 3 First(m) of the Railway Labor Act, 45 U.S.C. § 153 First(m). However, in its attempt to create ambiguity where there is none, URR conveniently disregards the explicit language of the Award (D.E. 12 at 6-7). The language URR disagrees with, "made whole," is absent from the relief ordered by the NRAB.[3] Even if the Board had ordered make whole relief, which it did not, such is far from ambiguous.

---

[2] It is well settled that a district court is the proper forum to enforce an award, and that a mere computation of damages does not strip the court of such jurisdiction. *See, e.g., Bhd. of R.R. Signalmen*, 688 F.2d at 538; *Bhd. of Railway & Airline Clerks v. St. Louis S.W. Ry.* ("*BRAC*"), 676 F.2d 132, 139 (5th Cir. 1982) (noting "we have established that a district court may compute the actual dollars and cents to which an employee is entitled under the Board's award") (citing *Sweeney*, 389 F.2d at 115-17); *Hanson v. Chesapeake & Ohio Ry.*, 412 F.2d 631, 634 (4th Cir. 1969) (holding "it was not beyond the jurisdiction or the competency of the district court to enforce the award by ascertaining the names of the employees in the affected class and translating the board's measure of damages into dollars and cents"). As such, there is no need to remand here. All this Court has to do is enforce the Award.

[3] Although the statement of claim did request that the Claimant be made whole for all time lost (Ex. A at 1), the Board ordered Claimant's return to service and" pay for time lost" (Ex. A at 6).

8

URR further contends an interpretation of the collective-bargaining agreement provision relating to the deductibility of outside earnings is now needed, despite its admissions that the CBA is silent on the issue (D.E. 12 at 2, 6; D.E. 12-2 at 2).  This is simply another attempt by URR to evade the only issue before this Court, enforcement of NRAB Award No. 5136.

In *Pittsburgh Metro Area Postal Workers Union v. USPS*, 938 F.Supp.2d 555, 558 (W.D. Pa. 2013), the union sought enforcement of two arbitration awards reinstating employees with "full back pay" after USPS imposed a mitigation requirement post-arbitration and failed to pay the employees in accordance with the awards.  USPS filed motion to dismiss for lack of subject matter jurisdiction, contending the meaning of "full back pay" required an interpretation which could only be conducted by an arbitrator, as it did not take into account its manual's mitigation requirement.  *Id.* at 561.  This Court held that the awards granting "full back pay, seniority, and benefits" and "make her whole for lost wages and benefits, less the time of the suspension" to discharged employees were unambiguous and therefore enforceable.  *Id* at 564; *see also Int'l Chemical Workers Union, Local 683C v. Columbian Chems. Co.*, 331 F.3d 491, 499 (5th Cir. 2003) (reversing district court's finding that award was ambiguous and concluding employee entitled to full back pay under award "because the Union requested a make whole back-pay remedy, the Company 'should have known that the issue of damages was before the arbitrator and so should have addressed it' in a timely and complete fashion"); *Int'l Union of Operating Eng'rs, Local No. 841 v. Murphy Co.*, 82 F.3d 185, 190 (7th Cir. 1996) (holding company's interim earnings argument did not make the award ambiguous); *Automobile Mechanics Local 701 v. Joe Mitchell Buick, Inc.,* 930 F.2d 576, 578 (7th Cir. 1991) (finding no ambiguity in award that made employees whole for all lost earnings resulting from their termination).

The Award states, "Claimant shall be reinstated to service with seniority unimpaired and <u>pay for time lost</u> in accordance with the Parties' Agreement" (D.E. 1-2, Ex. A at 6) (emphasis added). There is no ambiguity in that statement. *See, e.g., Sweeney,* 389 F.2d at 116 (noting "Board knew exactly how to word an award when it wished to give a monetary award for all time lost without deductions" and finding claimant entitled to total amount of "time lost" without deductions where award was for "time lost"); *Murphy,* 82 F.3d at 189 ("The rule is that an arbitrator's failure … to exclude certain benefits from an arbitration award is to be understood to mean that none exists."); *Buick,* 930 F.2d at 578 ("It is settled that arbitrators have discretion to decide whether lost earnings should be offset by interim earnings … so that their silence on such issues means that no such offsets are to be made."). As in *Pittsburgh Metro*, URR's self-generated dispute is a unilateral attempt to undermine an award it finds not palatable, 938 F.Supp.2d. at 563-64, and that which has already been finally determined. *Id.* at 564-65. In such a case, remand is improper. *Id.* at 563-64. Despite what the Award stated, URR unilaterally chose not to comply. Instead, URR now, at this late hour, asserts that it is entitled to offset outside earnings (D.E. 13 at 17-18). As in *Pittsburgh Metro* and *Columbian Chemicals*, URR should have known that the issue of damages was before the arbitrator. *Pittsburgh Metro,* 938 F.Supp.2d. at 563; *Columbian Chems.,* 331 F.3d at 499. However, for whatever reason, URR chose to not argue that it was entitled to offset any interim earnings against any back pay awarded while the matter was pending before the Board (D.E. 12-2 at 2). Such should not now be entertained by this Court.

    **IV.   URR Waived the Deductibility of Outside Earnings Issue When It Did Not Raise the Issue Before the Board.**

The notion that Plaintiffs cannot raise in court that which could have been raised in arbitration has long been established. *See United States v. L.A. Tucker Truck Lines,* 344 U.S. 33,

37-38 (1952); *Hill v. Norfolk & W. Ry.*, 814 F.2d 1192, 1199 (7th Cir. 1987) (finding argument that claimant was denied procedural protections waived by not having been made to the PLB); *Schneider v. S. Ry.,* 822 F.2d 22, 24 (6th Cir. 1987); *Bhd. of Ry. Airline & Steamship Clerks v. St. Louis Southwestern Ry.,* 676 F.2d 132, 136-37 (5th Cir. 1982) ("*BRAC*") (refusing to set aside award when railroad waived its notice objections by failing to object at the hearing).

URR's attempt to relitigate the deductibility issue should be barred upon remand, as it was waived. *See, e.g., Pittsburgh Metro*, 938 F.Supp.2d at 563 (finding employer "may not later inject a self-generated ambiguity or uncertainty into an arbitration award where there is no reason to believe there was one to begin with and where it demonstrably bypassed the opportunity to raise and litigate it at the arbitration"); *see also Buick*, 930 F.2d at 578 (finding employer barred from contending employee's interim earnings should have been deducted from the award where it did not raise the issue before the arbitrator).

URR had plenty of opportunity to raise its argument that it could offset any outside earnings from McCrumb's award of back pay during the proceedings before the Board, but it never even made mention of it (D.E. 12-2 at 2). Further, after the Award was issued, URR did not challenge the Award. It just decided to ignore the mandate of the arbitrator to pay McCrumb the lost wages owed under the Award, attempting instead to pay a lesser amount.

The Board found URR failed to prove its charges against McCrumb, and McCrumb was awarded to be reinstated and paid for time lost (*Id.* at 6). The Award is clear and URR should not be permitted to avoid its obligation by attempting to create issues where none exist.

> [T]he loser of the arbitration could try to frustrate the winner's entitlement to judicial assistance by arguing to the court that there was a contractual ground for not paying the award - an argument intended to touch off a new contractual dispute that must be arbitrated before the award can be enforced judicially. An infinite regress looms …

*BRAC v. Atchison, Topeka and Santa Fe Ry.,* 956 F.2d 156, 157 (7th Cir. 1992); *see also, Bhd. of R.R. Signalmen*, 688 F.2d at 544-45 (Will, S. D. J., concurring) (no need to extend already overextended case). Because URR did not timely raise the offset issue in the prior Board proceedings, it is foreclosed from doing so now. *BRAC*, 676 F.2d at 136. If URR wished to void the Award, the Act provides for the exclusive means to review under 45 U.S.C. § 153 First(q). *See Sheehan,* 439 U.S. at 93; *Diamond,* 421 F.2d at 233. URR never petitioned the court for review however, and now tries to create a new issue in an effort to avoid complying with the award.

V. **URR Did Not Raise the Deductibility of Outside Earnings Before the Board and Is Foreclosed From Doing So Now.**

URR claims that its right to calculate lost back pay with an offset for outside earnings has been previously arbitrated between URR and UTU, and that "these cases confirm that parties have a past practice under their CBA of using outside earnings as an offset to back pay awards in order to make a claimant whole" (D.E. 12 at 7-8). However this Court has held such a "practice" does not justify an employer's attempt to hinder enforcement. *See Pittsburgh Metro*, 938 F.Supp.2d at 563 (quoting *APWU v. USPS*, 222 F.Supp.2d 675, 685 (E.D.Pa. 2002) ("[D]espite the USPS's assertions that it has been its practice to apply [the manual] after an arbitration award of back pay, 'such a practice does not justify the Postal Service's attempt to impede a court's enforcement of an arbitration award.'").

Moreover, arbitral awards are not entitled to the same precedential effect as judicial decisions. *Westinghouse Elevators of Puerto Rico, Inc. v. S.I.U.,* 583 F.2d 1184, 1187 (1st Cir. 1978); *Steris Corp. v. Int'l Union, United Auto., Aerospace, & Agricultural Implement Workers of Am.,* 489 F.Supp.2d 501, 512 (W.D.Pa. 2007). Nor are they considered to be conclusive or binding in subsequent arbitration cases that involve the same contract language and a similar

issue. *See, e.g., Metropolitan Edison Co. v. NLRB,* 663 F.2d 478, 483 (3d Cir. 1981), *aff'd,* 460 U.S. 693 (1983); *Intern. Bhd. of Elec. Wkrs. v. United Tel. Co.,* 738 F.2d 1564, 1571 (11th Cir. 1984); *Hotel Ass'n of Washington, D.C., Inc. v. Hotel & Restaurant Emp. Union, Local 25,* 963 F.2d 388, 390 (D.C. Cir. 1992); *United Electrical Radio and Machine Workers v. Honeywell, Inc.,* 522 F.2d 1221, 1228 (7th Cir. 1975). URR's assertions to the contrary are unsupported and wholly without merit (D.E. 12 at 7-8).

Even if these awards did create a past practice entitling URR to an offset where "make whole relief" is awarded, which they do not, the language in the Award does not mirror that in the awards relied upon. As noted above, the Board ordered pay for time lost, not make whole relief. Thus, there is no "windfall" addressed or "contemplated" by the Board (D.E. 12 at 7). The remaining arbitration awards URR cites do not even involve the same parties, let alone the same collective-bargaining agreements (D.E. 12 at 7-8). It cannot be argued that somehow arbitration awards that have absolutely no relation to the issue here, even if they involve the same neutral arbitrator, are in fact binding.

Furthermore, even if the offset issue was an affirmative defense for URR to use to avoid paying lost wages and/or back pay in accordance with the Award, as noted above, it should have raised it during the arbitration. Because this issue was not raised by URR before the Board, it is now waived and cannot be considered by this Court. *Pittsburgh Metro*, 938 F.Supp.2d at 563; *Buick*, 930 F.2d at 578.

**VI.     Remand of an Unambiguous Award is Improper.**

URR half-heartedly attempts to claim that remand is appropriate here, as to hold otherwise would allow this Court to "speculate prematurely" (D.E. 12 at 9). In so asserting, URR relies on several cases which are neither controlling nor analogous here. *See Johnson v.*

*CSX Transp., Inc.*, No. WDQ-10-0777, 2011 WL 2619553, at *3 n. 8 (D. Md. June 30, 2011) ("whether employee should have been paid based on the rate of his average earnings or his most recent assignment would require the Court to interpret the Award and speculate about the calculation method the Board intended"); *United Transp. Union v. Patapsco & Black Rivers R.R.*, 327 F.Supp. 608, 610 (D.C.Md. 1971) (remanding to Board to determine deductibility of outside earnings where Board had simply ordered "claim sustained" and "Claim disposed of in accordance with the above Findings"); *Bhd. of R.R. Signalmen v. Chicago, Milwaukee, St. Paul & Pac. R.R.,* 248 F.Supp. 401, 407 (N.D. Ill. 1968) (finding award ambiguous and incapable of enforcement because award was silent regarding deductibility of outside earnings prior 1966 amendments where money award not final and binding); *Miller v. Chi. & N.W. Transp. Co.*, No. 88-c-6567, 1988 WL 135553, at *1-*3 (N.D. Ill. Dec. 9, 1988) (remanding to Board to determine whether carrier entitled to offset earnings during time claimant would have been furloughed but for the improper discharge, where award explicitly called for reinstatement and compensation for wage loss less any amount earned during the period the disciplinary action was in effect).  There is no such speculation required by the Court here.  Rather, the Board's directive to pay Claimant McCrumb for "time lost" was clear.  All that is required is for this Court to enforce the Award.

## **CONCLUSION**

For the foregoing reasons, Respondent's motion to dismiss, or in the alternative for remand should be denied.

        Respectfully submitted,

        s/ Michael J. Healey
        Michael J. Healey
        PA. I.D. No.27283

        Healey & Hornack, P.C.
        247 Fort Pitt Blvd., Fourth Floor
        Pittsburgh, PA  15222
        Tel: (412) 391-7711
        Fax: (412) 281-9509
        mike@unionlawyers.net

        and

        Erika A. Diehl-Gibbons
        Assistant General Counsel
        Kevin C. Brodar
        General Counsel
        SMART – Transportation Division
        24950 Country Club Boulevard, Ste. 340
        North Olmsted, Ohio 44070
        Tel: (216) 228-9400
        Fax: (216) 228-0937
        ediehl@smart-union.org
        kbrodar@smart-union.org

        Attorneys for Petitioners

## CERTIFICATE OF SERVICE

  Pursuant to the Court's directive to resubmit with signature using Errata event, I certify that on this 18th day of February, 2014, I electronically filed the foregoing Memorandum in Opposition to Respondent's Motion to Dismiss under Fed.R.Civ.P. 12(b)(1) or in the Alternative, Motion to Remand with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on the following counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF:

    M. Cristina Sharp (PA Id. 83864)
    United States Steel Corporation
    Law Department
    600 Grant Street, Room 1500
    Pittsburgh, PA  15219-2800
    (412) 433-2864
    mcsharp@uss.com

    Attorneys for Respondent


                s/ Erika A. Diehl-Gibbons
                Erika A. Diehl-Gibbons