IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| UNITED TRANSPORTATION UNION, | ) | |
|---|---|---|
| And S. MCCRUMB | ) | |
| Petitioners, | ) | Civil Action No. 13-1535 |
| | ) | |
| vs. | ) | Chief Magistrate Judge Lisa P. Lenihan |
| | ) | |
| UNION RAILROAD CO., | ) | ECF No. 11 |
| Respondent. | ) | |


**MEMORANDUM OPINION**
**ON MOTION OF RESPONDENT TO DISMISS UNDER 12(B)(1) OR REMAND**
**ON PETITION TO ENFORCE ADJUSTMENT AWARD**

**I. Summation**

      The Motion to Dismiss or Remand filed by Respondent Union Railroad Company (the "Railroad") will be denied, as the arbitration award at issue reflects a clearly-worded judgment on the matter and on the potential considerations which the parties elected to present to the arbitration panel, as more fully set forth below.  In addition, in light of its unambiguous wording (mirroring that of the parties' collective bargaining agreement and referencing the same) and the absence of any language (in either the arbitration judgment or the parties' collective bargaining agreement) regarding reduction or mitigation of the applicable contractual wage rate, the Court notes the enforceability of the award as requested in the Petition.

1

## II. Factual and Procedural History

Petitioner S. McCrumb ("Employee") was employed as a Yardmaster and was terminated by the Railroad on February 18, 2011. In accordance with the collective bargaining agreement ("CBA"), the Union filed a grievance on his behalf which proceeded to arbitration on the Petitioners' Statement of Claim seeking "to be made whole for all time lost" as well as related benefits. On February 25, 2013 the Fourth Division of the National Railroad Adjustment Board (the "NRAB" or "Board") issued Adjustment Award No. 5136, Docket No. 5123 (the "Adjustment Award" or "Award") in its judgment of arbitration between the above parties regarding the Employee's dismissal from employment by Respondent Railroad. See October 22, 2013 Petition to Enforce National Railroad Adjustment Award Under the Railway Labor Act ("Petition") (ECF No. 1) at Ex. A. In issuing its Award in favor of the United Transportation Union (the "Union") on behalf of the Employee, the Board found that the Railroad had failed to prove its charges against the Employee (*i.e.*, that he had been wrongfully terminated) and "[a]s a consequence, the [Employee] shall be returned to service with seniority unimpaired and pay for time lost in accordance with the terms of the Parties' Agreement." Ex. A at p. 6.[1] It ordered, in connection with the aforesaid remedy, that the Employer make the award within 30 days.

Although the Railroad otherwise complied with the Award,[2] it declined to pay the Employee back wages absent the Employee's provision of tax and wage statements, taking the position that it was entitled to deduct any outside earnings from the damage amount of "pay for

---

[1] The Award was made under Section 3 First (p) and Second of the Railway Labor Act ("RLA"), 45 U.S.C. Section 153.

[2] See Declaration of Jason Baginski ("Baginski"), Labor Relations Representative of Railroad's parent company. Ex. 1 to Respondent's Brief in Support of Motion to Dismiss or Remand.

time lost". Petitioners maintain that, under the Award, Employee is entitled to pay without mitigation or offset from February 18, 2011, the date of his wrongful dismissal, to February 22, 2013, the date of his post-arbitration reinstatement. See Petition at 4.

Petitioners requested, on October 22, 2013, an Order requiring compliance with the Award and an award of attorney's fees and costs in accordance with the RLA, 45 U.S.C. Section 153 First(p) and Second.[3] On January 10, 2014, the Railroad filed a request for interpretation

---

[3] See Section 153(p) ("If a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court of the United States for the district in which he resides or in which is located the principal operating office of the carrier, or through which the carrier operates, a petition setting forth briefly the causes for which he claims relief, and the order of the division of the Adjustment Board in the premises. Such suit in the District Court of the United States shall proceed in all respects as other civil suits, except that on the trial of such suit the findings and order of the division of the Adjustment Board shall be conclusive on the parties, and except that the petitioner shall not be liable for costs in the district court nor for costs at any subsequent stage of the proceedings, unless they accrue upon his appeal, and such costs shall be paid out of the appropriation for the expenses of the courts of the United States. If the petitioner shall finally prevail he shall be allowed a reasonable attorney's fee, to be taxed and collected as a part of the costs of the suit. The district courts are empowered, under the rules of the court governing actions at law, to make such order and enter such judgment, by writ of mandamus or otherwise, as may be appropriate to enforce or set aside the order of the division of the Adjustment Board: Provided, however, that such order may not be set aside except for failure of the division to comply with the requirements of this chapter, for failure of the order to conform, or confine itself, to matters within the scope of the division's jurisdiction, or for fraud or corruption by a member of the division making the order.")

See also Brotherhood of Locomotive Engineers and Trainmen, General Committee of Adjustment, Cent. Region v. Union Pacific R. Co., 822 F.Supp.2d 793, 799 -800 (N.D. Ill. 2011) (observing, in rejecting railroad's assertion that Court lacked subject matter jurisdiction over "minor dispute", that "[w]hen a carrier fails to comply with the terms of an NRAB award by the deadline set forth in the award, a cause of action to enforce the award accrues to the party in whose benefit the award was made") (citing Transp. Commc'ns. Int'l Union v. CSX Transp., Inc., 30 F.3d 903, 905 (7th Cir.1994); Bhd. of Loco. Eng'rs and Trainmen Gen. Comm. of Adjustment CSX Transp. N. Lines v. CSX Transp., 522 F.3d 1190, 1194 (11th Cir. 2008)).

3

with the NRAB.[4] On January 17th (following requested extensions to answer the Complaint), it filed its Motion before this Court. Respondent's Motion to Dismiss Under Fed. R. Civ. P. 12(b)(1) or to Remand ("Respondent's Motion") (ECF No. 11) asserts that (a) this Court is without subject matter jurisdiction as the issue constitutes a "minor dispute" under the RLA as a question of interpretation of the collective bargaining agreement and (b) jurisdiction of the NRAB is also warranted by prior arbitral opinions supporting the employer's use of an offset against wages to be paid under an award in the employee's favor. See Respondent's Motion.[5] The Railroad requests dismissal of the Petition or, in the alternative, remand to the NRAB for "interpretation" of the assertedly ambiguous Award.

---

[4] Cf. Respondent's Reply Brief at 2 ("Pursuant to its standard procedures, the NRAB has initiated the process for review of the Award . . . ."); 42 U.S.C.A. Section 153(m)("The awards of the several divisions of the Adjustment Board shall be stated in writing. A copy of the awards shall be furnished to the respective parties to the controversy, and the awards shall be final and binding upon both parties to the dispute. In case a dispute arises involving an interpretation of the award, the division of the Board upon request of either party shall interpret the award in the light of the dispute."). The Court observes the timing of the Railroad's request to the NRAB, and observes that this Court is not divested of jurisdiction by the internal appeals process. Cf. Newkirk v. Chicago & North Western Transp, 1996 WL 164376, *2 (N.D. Ill. Apr. 2, 1996).

[5] In that it found Respondent's Motion for Dismissal on the basis of 12(b)(1) meritless, the Court has, in the interest of judicial efficiency, also considered the merit of dismissal under Rule 12(b)(6) and reached a similar conclusion. Cf. Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Service, 938 F.Supp.2d at 560 ("This Court may consider a Rule 12(b)(1) motion under Rule 12(b)(6) instead if it is more properly viewed in that light . . . ."); id. (cogently reviewing Third Circuit precedent regarding motions to dismiss in the context of arbitration awards).

III. <u>Applicable Standards</u>

    **A. General Standard of Review Applicable to NRAB Award**

It is well established that a court's review of a labor arbitration award by an arbitrator appointed pursuant to a collective bargaining agreement ("cba") is extremely limited. See, *e.g.*, <u>United Paperworkers Int'l Union v. Misco, Inc.</u>, 484 U.S. 29, 37–38 (1987); <u>W.R. Grace & Co. v. Local 759, Int'l Union of United Rubber Workers</u>, 461 U.S. 757, 764 (1983). Judicial review is narrow because arbitration is intended to provide efficient and final resolution of labor disputes. <u>See</u>, *e.g.*, <u>Pittsburgh Metro Area Postal Workers Union, AFL-CIO v. U.S. Postal Service</u>, 938 F.Supp.2d 555, 563 (W.D. Pa. 2013) ("A central premise of the sanctity of the arbitration process . . . is that arbitration [is] to provide . . . relatively fast, inexpensive, and certain resolutions to workplace disputes"); <u>id.</u> (admonishing that an employer's "serial . . . relitigation" of "arbitrations of back pay awards, runs precisely counter to those principles"). <u>See also</u> discussion, *infra*.

    **B. General 12(b)(1) and 12(b)(6) Motion to Dismiss and Summary Judgment Standards**

    **1. Rule 12(b)(1)**

Under Rule 12(b)(1), the movant makes either a facial or a factual challenge to the Court's subject matter jurisdiction. See, *e.g.*, <u>Patsakis v. Greek Orthodox Archdiocese of America</u>, 339 F.Supp.2d 689, (W.D. Pa. 2004) (citing <u>Mortensen v. First Fed. Sav. & Loan Ass'n</u>, 549 F.2d 884, 891 (3d Cir. 1977)). In a facial attack, the Court must consider the allegations of the complaint as true, similar to a motion to dismiss under Rule 12(b)(6). <u>Mortensen</u>, 549 F.2d at 891; <u>Internat'l Ass'n of Machinists & Aerospace Wrokers v. Northwest

Airlines, Inc., 673 F.2d 700, 711 (3d Cir. 1982). A factual challenge goes, however, to the Court's power to hear the case:

> Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction its very power to hear the case there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. In short, no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist.

Id. (citing 5 C. Wright and A. Miller, Federal Practice and Procedure § 1350 (1969)) (footnote omitted). See also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005) (citing Kehr Packages, Inc. v. Fidelcor, Inc., 926 F.2d 1406, 1409 (3d Cir. 1991)); Mortensen, id.). Thus, in a Rule 12(b)(1) factual challenge, the Court must ensure that its ruling is based on an adequate record. Internat'l Ass'n of Machinists & Aerospace Workers, 673 F.2d at 711-12.

### 2. Rule 12(b)(6)

Recently, the United States Court of Appeals for the Third Circuit aptly summarized the standard to be applied in deciding motions to dismiss filed pursuant to Rule 12(b)(6):

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." Fowler, 578 F.3d at 213 (quotation marks and citations omitted); see also Covington v. Int'l

6

Ass'n of Approved Basketball Officials, 710 F.3d 114, 117–18 (3d Cir.2013).

Thompson v. Real Estate Mortg. Network, ___ F.3d ___, 2014 WL 1317137, *2 (3d Cir. Apr. 3, 2014).

"In deciding a Rule 12(b)(6) motion, a court must consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).

### 3. Summary Judgment

Summary judgment is proper if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In considering summary judgment, a court must draw all reasonable inferences from the underlying facts in the light most favorable to the adversely-affected party. See, *e.g.*, Emerson Radio Corp. v. Orion Sales, Inc., 253 F.3d 159, 162 (3d Cir. 2001).

## IV. Analysis

### A. Jurisdiction

As a threshold matter, then, the Court must address Respondent's 12(b)(1) challenge, and assure itself of its jurisdiction. Cf. Fed.R.Civ.P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

Article III of the United States Constitution authorizes federal court jurisdiction for suits arising under the laws of the United States. See U.S. Const. art. III, § 2, cl. 1. Congress has authorized the federal courts to exercise this "federal question" jurisdiction in 28 U.S.C. § 1331,

which provides, "[t]he district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331 (2006). Invoking federal law, Petitioners ask this Court to enforce the Board's order.[6] Under the provisions of the RLA, this Court may affirm the Award; set it aside in whole or part; or remand it to the NRAB for "such further action as it may direct." Respondents' Brief in Support of Motion to Dismiss or Remand at 5 ("Respondent's Brief in Support") (ECF No. 12) (citing 45 U.S.C. Section 153 First (q)).

Respondent asserts that this Court is without subject matter jurisdiction because the Railroad's disagreement about the Award's "pay for time lost" component "amounts to disagreement about the meaning of the underlying collective bargaining agreement" and is a "minor dispute" subject to the exclusive jurisdiction of the NRAB. Respondent's Brief in Support at 7. This Court finds the recent analysis of the Court of Appeals for the Tenth Circuit more persuasive. See Brotherhood of Locomotive Engineers and Trainmen v. BNSF Ry. Co., 2013 WL 6404962, *4 (10th Cir. 2013) (rejecting assertion that employer could "compel the Union to arbitrate simply by presenting an 'arguable' interpretation of the award" as "confusing the award with the CBA" and concluding that, where the parties' collective bargaining agreement was silent on the issue of offset, question did not present a "minor dispute"). See also id. ("Under Conrail, disputes that "arise 'out of the interpretation or application of' existing collective bargaining agreements" are classified as "minor disputes" subject to binding arbitration . . . . 'The distinguishing feature of [a minor dispute] is that the dispute may be

---

[6] As noted above, Section 153 First (p) provides, "[i]f a carrier does not comply with an order of a division of the Adjustment Board within the time limit in such order, the petitioner, or any person for whose benefit such order was made, may file in the District Court" a petition for enforcement of the award.

8

conclusively resolved by interpreting the existing collective bargaining agreement.' . . . (quoting Conrail, 491 U.S. at 305). The problem with [the employer's] argument, however, [includes] that . . . the CBA is silent on the issue of offset . . . [and it is clear that] this dispute cannot 'be conclusively resolved by interpreting the existing [CBA]' . . . .") (citations omitted); Respondent's Brief in Support at 4-5 (noting that "[a] minor dispute is 'a dispute arising or growing out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions' and contemplates an existing agreement") (citing Consol. Rail Corp., *supra*); Petitioners' Memorandum in Opposition to Motion to Dismiss or Remand ("Petitioner's Opposition") at 9 ("[Employer] further contends an interpretation of the [CBA] provision relating to the deductibility of outside earnings is now needed, despite its admissions that the CBA is silent on the issue.") (citations omitted).[7] This Court has jurisdiction.[8]

The Court concurs, however, that if the Award is ambiguous it must be remanded for clarification. For, as Respondents correctly observe, it is for the NRAB, not the District Court, to clarify an ambiguous Award. See Respondents' Brief in Support at 5 (citing 45 U.S.C. § 153

---

[7] Cf. Consol. Rail Corp. v. Ry. Labor Execs. Ass'n, 491 U.S. 299, 304–05 (1989).

[8] Cf. Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d at 558-560 (discussing § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a), conferring jurisdiction to enforce arbitration awards not inconsistent with terms of a cba) (citing Union Switch & Signal Div. Am. Std. Inc. v. United Elec., Radio & Mach. Workers of Am., Local 610, 900 F.2d 608, 612 (3d Cir.1990)); id. at 561 (observing that "most fundamentally, the parties contest whether the Union is asking this Court to 'interpret' or to 'enforce' the arbitral awards", with – if the latter - any counterarguments not presented at arbitration being strictly barred as waived); cf. also Petitioners' Opposition at 6-7 ("There is no dispute that . . . the *underlying claim* here . . . [is a] 'minor dispute[]' . . . . *[h]owever*, once a Board renders a 'final and binding' decision . . . such must be enforced . . . unless the grounds for review . . . are satisfied.") (citations omitted) (emphasis added).

9

First (m)). See also Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d at 561 (noting that in considering enforcement of an arbitration award, court may not reevaluate merits of the arbitrator's decision but "when the remedy awarded by the arbitrators is ambiguous, a remand for clarification . . . is appropriate") (citing Colonial Penn Ins. Co. v. Omaha Indem. Co., 943 F.2d 327, 334 (3d Cir. 1991),[9] Bhd. of Locomotive Eng'rs v. Union Pac. R.R. Co., 500 F.3d 591, 592 (7th Cir. 2007) ("If an arbitration award is *too ambiguous to be enforced* . . . the district court should [remand] for clarification . . . .") (emphasis added).[10]

Conversely, where the Award is unambiguous, it should be enforced as written, under § 153 First (p) of the RLA. The Court concludes that the order is unambiguous and that Respondent is not entitled to offset or mitigation against Employee's "pay for time lost in accordance with the Parties' Agreement" (*i.e.*, the CBA's contractual wage rate(s)).

**B. Waiver**

As the Petitioners note, another threshold matter in this case is that of waiver, *i.e.*, whether the substantive issue raised in response to the Petition for Enforcement was properly raised below. See, *e.g.*, Newkirk v. Chicago & North Western Transp., 1996 WL 164376, *3 (N.D. Ill.1996) (observing - in case discussing employer's failure, before NRAB, to raise alleged entitlement to

---

[9] See also id. (further observing that "where all that remains in terms of the remedy is a computation of the amount of damages, such outstanding issues are" ministerial); Petitioners' Opposition at 8, n. 12.

[10] Although courts once had authority to review NRAB orders to the extent they contained money awards, see Gunther v. San Diego & Ariz. E. Ry. Co., 382 U.S. 257, 260, 264 & n. 3 (1965), the 1966 amendments to the RLA uniformly made NRAB orders, including those containing money awards, "final and binding upon both parties to the dispute", Bhd. of R.R. Trainmen v. Denver & Rio Grande W. R.R. Co., 370 F.2d 833, 835 (10th Cir.1966) (quoting 45 U.S.C. § 153 First (m)); see also Diamond v. Terminal Ry. Ala. State Docks, 421 F.2d 228, 233 (5th Cir.1970).

offset back pay of employee who had been discharged for two years – that "[t]he law provides that the failure to raise issues before an arbitrator waives those issues for the subsequent enforcement proceeding") (citing National Wrecking, 990 F.2d at 960-61; Mogge v. District 8, Int'l Ass'n of Machinists, 454 F.2d 510, 512-13 (7th Cir. 1971)); id. (concluding that employer waived its claim for interpretation it sought where it made only a "passing reference" and attached an NRAB award, because it failed to "press [its argument] to the board" and thus "preserve it") (citing BPS Guard Serv. v. Int'l Union of United Plant, 45 F.3d 205, 208-09 (7th Cir. 1995)) . See also Petitioners' Opposition at 11-12 (citing cases and observing that URR failed to either raise an offset argument or to challenge or to petition for review of the Award).

Here, as in Newkirk, the Court concludes that the issue of the employer's entitlement to mitigation of the damages awarded for lost contract wages during the two-year period of improper discharge was not properly raised by the Railroad before the NRAB or otherwise timely contested, and thus it was waived. The Court will nevertheless address the merits of that issue. Cf. Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d at 563 (noting that "[m]any of the opinions [rejecting employer's attempt to impose a mitigation requirement post-arbitration award and have case resubmitted to arbitration] view the issue in terms of waiver"); id. (concluding that employer "may not later inject a self-generated ambiguity or uncertainty into an arbitration award . . . where it demonstrably bypassed the opportunity to raise and litigate it at the arbitration").

**C. Award of "Pay for Time Lost in Accordance with the Parties' Agreement"**

As noted above, Respondent did not request, and the Adjustment Award makes no mention of, any offset or mitigation of damages by Employee's outside earnings while he was unjustly discharged. To the contrary, the Award – in articulating the remedy - expressly directs that the

11

employee receive "pay for time lost in accordance with the Parties' Agreement".  Neither party disputes that the applicable collective bargaining agreement (*i.e.*, the "Parties' Agreement" referenced in the Award) contains no provision permitting the Railroad to deduct outside earnings from contractual wages . See discussion, *supra*.  See also, *e.g.*, Respondent's Brief in Support at Ex. 2 (March 22, 2013 email from Baginski on behalf of Railroad, noting that "[the CBA's] Rule 34(f) simply states that employees who are 'improperly discharged' shall be paid for 'all time lost' . . .").  The contractual "time lost" by the Employee, with regard to his improper dismissal from employment with the Railroad, and thus owed to the Employee by the Railroad, as determined by the NRAB, was the period of time from that dismissal until his reinstatement.[11]

Although the Court of Appeals for the Third Circuit has not expressly spoken to this issue, the Seventh Circuit has held that because arbitrators have the discretion to decide whether lost earnings may be offset by the doctrine of mitigation, an arbitrator's silence on the issue means no offsets are to be made (*i.e.*, it is unambiguous).  See Automobile Mechanics Local 701 v. Joe Mitchell Buick, 930 F.2d 576, 578 (7th Cir. 1991) (concluding that employer was clearly unentitled to offset under language of award and, accordingly, affirming District Court's

---

[11] Compare Respondent's Motion, Ex. 2 (asserting that because the CBA "does not contain a specific provision to prevent" the Railroad's offset of lost pay during a period of improper dismissal, which Respondent characterizes as a "penalty provision" or one for "punitive damages", it is entitled to deduct any outside earnings as a "restor[ation of] the 'status quo' of the contract").  The Court observes that the NRAB did not order the Railroad to pay its Employee more than the wages owed to him under the CBA had he not been removed from employment without just cause.  The obligation to pay its contractual wages for periods of unjust discharge provides a proportional disincentive for an employer to unwarrantedly terminate its employees.

12

determination that remand was unwarranted).[12] Cf. Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d at 564-65 (in which this Court recently held that arbitrators' awards of "full back pay" and "make whole for lost wages" were unambiguous where there was no dispute as to rate, hours, or individuals; and there was no basis to diminish the award after the fact by applying a mitigation rule contained in the employer's Employee and Labor Relations Manual (which manual was referenced in the cba) but nowhere referenced in the arbitration award).

Moreover, other Courts have concluded that an award of payment "for time lost" in accordance with the parties' cba is unambiguously exclusive of offset. See, *e.g.*, Dean Foods Co. v. United Steel Workers of America, 911 F.Supp. 1116, 1126 (N.D. Ind. 1995) (concluding, where cba referred to payment "for time lost", that award was without offset for other earnings); id. ("[T]he Company's argument[] . . . that the arbitrator . . . improperly interpreted the collective bargaining agreement to dispense with ordinary mitigation of damages principles—clearly must

---

[12] See also Massachusetts Bay Transp. Authority v. M.B.T.A. Executive Union, Local 9501, 2008 WL 2683845, *2-3 (Mass. Super. 2008) (finding Buick, *supra*, and International Union of Operating Engineers, Local No. 841 v. Murphy Co._,_ 82 F.3d 185, 186 (7th Cir.1996) "instructive" and similarly holding that employer is unentitled to offset under arbitrator's "make whole" award, and "the silence of an award as to offsets is understood to mean that none were intended"); International Chemical Workers Union v. Columbian Chemicals Co., 331 F.3d 491, 498 (5th Cir. 2003) (concluding, in concurrence with Seventh Circuit decision, that arbitrator's silence on offsets meant that none were granted, not that ruling was ambiguous); id. (citing extensively to International Union of Operating Engineers, Local No. 841 v. Murphy Co._,_ 82 F.3d 185, 187-89 (7th Cir. 1996) (holding, with regard to order that employees be "reinstated to employment and made whole", that "[t]he rule is that an arbitrator's failure to impose a duty to mitigate or to exclude certain benefits from an arbitration award is to be understood to mean that none exists" and "assum[ing] the award did not mention offsets because none was granted"); id. ("Because the remedy sought by the Union in Murphy was for the employees to be reinstated and be made whole with back wages and fringe benefits, the Seventh Circuit, 'assume[d] that an arbitrator's failure to mention offsets in his ruling means that no offset was granted, not that the ruling was ambiguous.'"); id. (noting that in Murphy, Seventh Circuit also explained that employer waived issue of offset by, among other things, failing to raise it before the arbitrator during the hearings or in its post-hearing briefs and by failing to challenge it); Petitioners' Opposition at 10.

fail. . . . . On the contrary, the arbitrator applied a traditional principle of contract interpretation—that, in the absence of anything indicating that the words of a contract are intended to have a technical or special meaning, the words should be given their ordinary and popularly accepted meaning."); Petitioners' Opposition at 10 (citing Sweeney v. Florida East Coast Ry., 389 F.2d 113 (5th Cir. 1968) (finding claimant awarded "time lost" entitled to total amount without deductions)).

Respondent has asserted that "the remedy merely calls for the [Railroad] to make [the Employee] whole by paying him the difference between what he would have earned had he been working and what he actually earned during the period of his dismissal." Respondent's Motion, Ex. 2. As Respondent correctly observes, many NRAB awards have been framed as a directive to make the employee whole, and the Employer has expressly asserted a basis for offset/mitigation of damages (often accompanied by submission of prior analogous decisions to the Board), or – if not - the Employer has timely asserted its position that an offset should be made subsequent to the award.[13] In the course of this arbitration, the Employer elected to do

---

[13] As both parties were fully aware, "make whole" awards have been variously articulated by the arbitrators and/or enforced by the Courts. Compare Respondent's Brief in Support (citing cases) with Petitioner's Opposition at 9 (citing cases holding that make whole awards were unambiguous and did not envision mitigation); Pittsburgh Metro Area Postal Workers Union, *supra* (recent case before this court holding such award unambiguously exclusive of mitigation). Cf. Int'l Union of Bricklayers & Allied Craftworkers v. Inter-State Tile & Mantel Co., Inc., 2010 WL 2034695 (M.D. Pa. May 10, 2010) (refusing to allow employer to deduct amount related to mitigation of damages from "make whole" arbitration award).

Respondent's characterization of Postal Workers, *supra*, as inapposite because the requested offset was based on potential as opposed to actual outside earnings is utterly unavailing. The language of the opinion, a model of lucidity and thoroughness, provides no grounds whatsoever for any such distinction. Cf. International Chemical Workers Union, Local 683C v. Columbian Chemicals Co., 331 F.3d 491, 498-99 (5th Cir. 2003) (holding arbitration award for "'full back pay'" is not ambiguous on its face simply because it fails to address whether the award is to be offset by a grievant's interim earnings or a grievant's failure to mitigate his damages by taking

14

neither, although it was clearly aware that it could, if it so chose, (a) request that the damages awarded be limited to the difference between the contractual wages owed and the amount which Employee earned through other employment during his two-year period of wrongful dismissal; and (b) raise any related factual and/or legal assertions (including, e.g., those regarding contract interpretation, modification of contractual language by past practice or custom, etc.).

As noted extensively *supra*, the language of the actual remedy awarded in this case – in February, 2013 –calls for the Employee to receive "pay for time lost in accordance with the Parties' Agreement" and, in so doing, speaks for itself.[14] And, as also noted above, Respondent raised no contest - under the procedures available to it – to the plain language of the Award, nor any request for "interpretation" of that language, until several months after the Petition for Enforcement.

This Court is in full agreement with the many courts to have concluded that an employer simply should not have "two bites at the arbitration apple" and may not diminish an arbitration award after the fact by applying a mitigation rule nowhere referenced in it. Cf. Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d at 563, n. 9; id. at 564.[15] This Court has jurisdiction;

---

reasonable steps to seek interim employment").

[14] A Federal Court is required to enforce an arbitration award as written. See, *e.g.*, Oil, Chemical & Atomic Workers International Union, Local 4-367 v. Rohm & Haas, Texas, Inc*.,* 677 F.2d 492, 495 (5th Cir.1982).

[15] Cf. also id. at 563 (agreeing with holding of other courts that employer's practice of mitigating arbitration award of back pay "'does not justify [employer]'s attempt to impede a court's enforcement of an arbitration award'" and employer's position in this regard conflicts with a CBA provision "that arbitration awards 'shall be final and binding'" because 'in essence, the [employer] determines whether the individual should receive back pay after the arbitrator has already determined the issue'") (citations omitted).

and in considering the case on the merits of its undisputed facts of record, has found that the Award (*i.e.*, the remedy articulated) is unambiguous, final and binding, and thus enforceable.[16] Enforcement of the Award is appropriate as the record presented demonstrates that there is no genuine issue of material fact and Petitioners are entitled to enforcement as a matter of law.[17]

## D. Award of Fees

Petitioners also seek an award of attorneys' fees. As they observe, Section 153(p), does clearly provide for the award of attorney's fees to a prevailing petitioner. See n. 3, *supra*.[18] Cf.,

---

[16] Here again, the Court refers to the fine opinion in Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d 555. Cf. id. at 565, n. 12 (observing, with citation to Justice Brennan, that although the Court is sensitive to the fact that ambiguity may lie in the eye of the beholder, remand to the arbitrator is warranted where the award is "subject to at least two interpretations, . . . fails to take into account [post award] circumstances . . . [or where] the court does not know what it is being asked to enforce" none of which thresholds were met where arbitration awards were for "full back pay" and to "make whole for lost wages"); see also discussion *supra*. Cf. Brown v. Witco Corp., 340 F.3d 209, 220 (5th Cir. 2003) (noting that "the court itself must determine whether the arbitration award is ambiguous and decide what must be clarified by the arbitrator on remand").

[17] Cf. Pittsburgh Metro Area Postal Workers Union. at 565 n. 14 (noting that necessary consequence of employer's failure to raise mitigate argument before arbitrator in first instance and request for further arbitration "runs counter to the principles" of arbitration to facilitate "fast, inexpensive, certain and final disposition of workplace disputes"); cf. also International Chemical Workers Union, 331 F.3d at 499 (observing that where employer raised issue of offsets "for the first time" in response to "Union's Motion to Enforce the Award filed in federal court" then, as the Seventh Circuit also concluded, "if [the Courts] hold that the Arbitrator's award is ambiguous, we 'only encourage employers to withhold evidence or comment on important issues, thereby undermining arbitration as a valuable tool for expeditiously and inexpensively resolving employer-employee disputes'") (quoting Murphy, 82 F.3d at 190); id. (concluding that "[s]uch is the situation [where] the Union requested a make whole back-pay remedy, the Company 'should have known that the issue of damages was before the arbitrator and so should have addressed it' in a timely and complete fashion") (quoting Murphy and finding employee "entitled to the entire sum of back-pay in accordance with the arbitration award").

[18] See *e.g.*, American Train Disptachers Ass'n v. Consolidated Rail Corp., 1992 WL 247306, *8-9 (E.D. Pa. 1992) (concluding that "[b]y virtue of the entry of judgment in its favor, [Union was] entitled to a reasonable attorneys' fee to be taxed against [Railroad] and collected as part of costs in this action") (citing 45 U.S.C. § 153, First (p)).

*e.g.*, Norfolk & W. Ry. Co. v. Brotherhood of Ry., Airline and S. S. Clerks, Freight Handlers, Exp. and Station Emp. 657 F.2d 596, 603 (4th Cir. 1981) (noting that "[t]he Seventh Circuit has concluded that it was Congress' intention in enacting the attorney's fees provision that unions not be discouraged from enforcing their rights because the expense of district and appellate court consideration could outweigh the benefits of an award"); id. (reversing District Court's denial of fees). The Court thus concludes that Petitioners are entitled to reasonable attorney's fees, as determined on submission.

## V. **Conclusion**

For the reasons set forth above, an Order consistent with this Memorandum Opinion, denying the Respondent's Motion to Dismiss or Remand will be entered.[19] As this Court has now rejected Respondent's position(s), all that remains is enforcement of the NRAB Award, as compelled by the undisputed record, and an award of reasonable attorneys' fees to Petitioners in accordance with the express provisions of the applicable statute. The parties are therefore directed to reevaluate their settlement positions in light of this Opinion and to exhaust all efforts to settle the remaining issues. The parties shall appear for a status conference to be held within the next thirty (30) days to address an Order of enforcement and fees, unless this Court is informed that this litigation has been settled. Cf. Brotherhood of Locomotive Engineers and

---

[19] Cf. Pittsburgh Metro Area Postal Workers Union, 938 F.Supp.2d at 565 ("Because Plaintiffs have adequately stated a claim for relief which this Court has the power to grant, namely enforcement of an arbitration award, and the undisputed record compels the grant of that relief, Respondent's Motion to Dismiss [under Rule 12(b)(1)], construed as a 12(b)(6) motion, must be denied.")

17

Trainmen, General Committee of Adjustment, Cent. Region v. Union Pacific R. Co., 822 F.Supp.2d 793, 803 (N.D.Ill. 2011).

                                                 /s/ Lisa Pupo Lenihan
                                                LISA PUPO LENIHAN
                                                United States Chief Magistrate Judge

Dated: April 22, 2014